By the Court, Morgan, J.
The statements of the plaintiff, when compared together, lead to the necessary conclusion that he left his boat in charge of Dwyre, who" had run her during the season of 1866, with directions to him to have her tied up to the Atlantic dock for the season, and that he had spoken to Martin, who had charge of the boats there, to take her in charge; that Dwyre, instead of delivering up the boat to Martin, to be fastened up to the dock, run her back to Albany and took on board a load of oats, consigned to the defendants ; and after reaching the harbor, in New York, and collecting what freight he could, he abandoned the boat to take care of itself; that the plaintiff then discovered his boat, with the oats on board, in the harbor, and took her in charge, and tied her up to another boat, intending to collect the freight and the demurrage of the consignees, and for that purpose called at the office of the defendants and notified the clerk, in the absence of the defendants, that Dwyre had used his boat without authority, and he should look to the defendants for the *288 pay for storage and freight. There is no direct evidence that the consignees had paid the freight to Dwyre, although they declared they had done so. The boat, it seems, was used to store the oats in, with the consent of the plaintiff, until they could be discharged. They were afterwards discharged by the directions of the defendants. So much appears by the case. There is also reason to believe, from what transpired on the trial, that the defendants paid the freight to Dwyre, who was to discharge the cargo; and in consequence of his omission to unload, the defendants procured her to be unloaded at ah elevator at the expense of the owner; which expense the plaintiff was obliged to pay, in order to release his boat, as the law, it seems, gives to the owners of the elevator, in such a case, a lien upon the boat, for the charges of unloading.
The defendants promised to pay the plaintiff for the use of his boat to store the grain, if he could show he was the owner, but this agreement was made after the boat had been unloaded; and for that' reason, it is claimed by the defendants not to be binding upon them. In my opinion, the defendants were trespassers in interfering with the boat after the plaintiff had. taken her into his charge, and had tied her up to another boat. This would be so, assuming that Dwyre had no authority from the owner to use her. And upon the plaintiff’s statement this fact must be assumed, on this motion.
It is said that notice to the clerk in the office of the consignees was not notice to the defendants of the plaintiff’s claim. But this is not important, for whoever meddled with the boat afterwards, without the assent of the plaintiff, express or implied, would be answerable in trespass for any damages which the plaintiff sustained in consequence of such unwarrantable interference.
The plaintiff- being unable to see the defendants personally, doubtless trusted that they would pay him, at least, for the use of the boat thereafter, and did not fur *289 ther interfere, after giving notice of Ms claims to the clerk in charge of the office. But the defendants proceeded afterwards, at their own risk, as to the ownership of the boat, Dwyre not being there, to uMoad it according to his contract and the usage in such cases. If the defendants could have stood aloof without. any actual interference, and could have obtained the cargo by the aid of Dwyre, availing themselves only of the wrong of Dwyre to obtain their property, I can see that they would not have made themselves responsible to the plaintiff. But unfortunately for the defendants, Dwyre disappeared from the scene, and it became necessary for them to give orders for uMoading the boat. At tMs point of time they doubtless rendered themselves liable to the plaintiff, whether they knew he was the owner, or not; and if they used the boat afterwards, to store their grain and unload it at an elevator, with the consent of the plaintiff, the law would imply a promise on their part to pay him for such use; and if by their use of the boat they brought a legal charge upon it which the plaintiff was obliged to pay in order to repossess Mm-self of his property, I am of opinion that the defendants would be liable to repay it.
• TMs brmgs us to the only question of difficulty to be disposed of on this motion. It is said that if the use of the boat by the defendants, after its arrival in Hew York, was without the consent of the plaintiff, the defendants are only liable in an action of trespass. I think we have held otherwise, though the point is not without difficulty. (See Hill. on Torts, 44.) It is held,- in some cases, that the defendant is estopped to say there was no promise, and that he took the property wrongfully. Waiving this question, therefore, I think it is clear that the subsequent promise of the defendants to pay for such use' is founded upon a sufficient consideration to sustain an action. ° It is the common case of a promise by *290 a wrongdoer to pay the damages sustained by the owner of property, and implies a waiver of the tort.
The waiver of the tort is a sufficient consideration to sustain a promise to pay for the use of the boat. It is said that the promise in this case, as sworn to by the plaintiff, was conditional; and I think it was conditional to pay the plaintiff if he was in fact the owner of - the boat, and as such entitled to the use. It may be a question whether the plaintiff can recover the amount paid by him to release the boat from the lien of the attachment. The claim in the complaint seems to be for the freight and the use of the plaintiff’s boat. As to the freight, I am unable to discover upon what ground the plaintiff can recover it, in this or any other form of action. Up to the time the boat was abandoned by Dwyre, there is "no pretence that the defendants had in any manner interfered with the plaintiff’s rights. But I think they are answerable for the damages which the plaintiff sustained after they took the matter into then-own hands and actually interfered with the boat after its arrival in Hew York. So far as the claim rested upon contract between Dwyre and the defendants, the plaintiff could not recover the contract price without adopting the agency of Dwyre; and if Dwyre had been paid the freight it would devolve upon him or the plaintiff to unload the boat. Certainly the plaintiff cannot recover the freight and also the charges for unloading the boat. Having failed to show that he was entitled to recover the freight, it may admit of question whether he can recover the expenses incurred by him in procuring his boat to be released from the attachment, without an amendment of his complaint. An action for the freight eo nomine would proceed upon the ground that Dwyre was his agent, or that the plaintiff has chosen to adopt his contract by which freight was earned. But the case itself does not show that the plaintiff ever" intended to adopt the acts of Dwyre, unless he could thereby persuade the *291 defendants to pay Mm the freight, instead of paying it to Dwyre. The defendants havmg refused, I think the oMy remedy of the plaintiff is to treat the defendants as trespassers after their interference with the boat on its arrival in New York.
[Onondaga General Term,
June 29, 1869.
Bacon, Foster, Mullin and Morgan, Justices.]
Whether the complaint will require to be amended before the plaintiff could properly claim to recover the expenses paid by him to obtain possession of Ms property, is a question I have not considered.
In my opmion, the motion for a new trial should be granted, with costs to abide the event.
New trial granted.